Ronald W. COCKINGS and Bonnie
H. Cockings, husband and wife,
Appellees,

v.

William R. AUSTIN, Appellant.

No. 77703.

Supreme Court of Oklahoma.

May 9, 1995.

---

Frank M. Hagedorn, William R. Burkett, and Kevin Y. Litz, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa and Oklahoma City, for appellant.

Charles M. Laster and Virginia Henson, Shawnee, for appellees.

WATT, Justice:

This appeal arises from the latest of five suits involving Appellant, William R. Austin, and Appellees, Ronald W. Cockings and his wife Bonnie H. Cockings. The parties' relationship began in August 1984, when they agreed to set up a corporation to purchase Troxell Auto Parts in Shawnee, Oklahoma. They formed their corporation, and named it Troxell Parts. Austin owned one-half the shares. The other half were owned by the Cockings.

Austin was a Shawnee businessman, and Ronald Cockings was vice president of a Shawnee bank where Austin did business. Austin and Cockings agreed that Cockings would resign from the bank, become president and general manager of Troxell Parts, and take responsibility for the business's day to day operations.

The parties' corporation, Troxell Parts, bought the Troxell Auto Parts business, and the real property upon which it was conducted, from J. Emery Troxell and Iona Mae Troxell. The parties paid the Troxells $375,-000 in cash. The Troxells also took a $230,-000 note from Troxell Parts. In addition, Austin gave a personal guaranty to the Troxells for fifty percent of the $230,000 note, and the Cockings personally guaranteed the other fifty percent.

Later, Troxell Parts borrowed $325,000 from the American National Bank of Shawnee. The American National note was secured by a real estate mortgage on the realty

Troxell Parts had acquired from Troxell Auto Parts. Austin and the Cockings jointly and severally guaranteed payment of the entire $325,000 note.

In May 1986 Austin relieved Cockings of his management responsibilities. Earlier, Ronald Cockings had transferred twenty-five percent of the shares of Troxell Parts to Austin. These events gave rise to the first of the five suits between the parties in the District Court of Pottawatomie County.

## Case No. 86–953

In October 1986, the Cockings sued Austin for, among other things, a declaratory judgment regarding the ownership of the shares of Troxell Parts. The District Court of Pottawatomie County entered an order holding:

IT IS, THEREFORE, THE ORDER AND JUDGMENT OF THIS COURT that the ownership of stock in Troxell Parts, Inc., as of this date is one hundred and twenty five (125) shares in Bonnie H. Cockings, and three hundred and seventy-five (375) shares in William R. Austin.

IT IS THE FURTHER ORDER AND JUDGMENT OF THIS COURT that the effective date of the transfer of shares of Troxell Parts, Inc., from Ronald W. Cockings to William R. Austin was October 23, 1985.

IT IS THE FURTHER ORDER OF THE COURT that upon such transfer, that William R. Austin became liable for three-fourths (¾ths) of all outstanding note indebtedness of the corporation, upon which the parties were individually liable, as of that date excluding any indebtedness on the real property.

## Case No. 88–662

Troxell Parts defaulted on its note to the American National Bank of Shawnee. American National sued Troxell Parts, Austin, and the Cockings, to foreclose its real estate mortgage. On September 8, 1989, following the foreclosure and sale of the real property

secured by the mortgage, the District Court of Pottawatomie County entered a deficiency judgment for American National against Austin and the Cockings on the guaranties they had given American National. Austin satisfied American National's judgment and sought contribution from the Cockings for a portion of the amount he had paid American National.

The Cockings asserted as an affirmative defense that Austin should be limited to a recovery of no more than twenty-five percent of the amount Austin had paid to American National. The twenty-five percent-seventy-five percent judgment in case No. 86–953 was the basis for this affirmative defense.

The Cockings also asserted a counterclaim grounded in fraud and collusion.[1] The trial court granted Austin's motion for judgment on opening statement with respect to the Cockings' counterclaim. The judgment in case No. 86–953 was not part of the basis for the Cockings' counterclaim.

A jury returned a verdict for the Cockings on Austin's claim for contribution. The trial court, however, granted Austin's motion for new trial, and we affirmed. The matter has not been retried.

## Case No. 89–233

Troxell Parts also defaulted on its $230,000 note to the Troxells. The Troxells sued the Cockings on the Cockings' guaranty of one-half of the note. Austin had previously paid the Troxells' one-half of the amount due on their note. On July 26, 1989, the Cockings joined Austin as a third party defendant. The Cockings sought indemnification from Austin for any liability arising from the Troxells' note. The Cockings agreed to a judgment against them in favor of the Troxells. The trial court dismissed the Cockings' third party claim against Austin because the Cockings had not yet paid the Troxell's judgment. The trial court held that the indemnity judgment in case No. 86–953 indemnified against

---

1. The Cockings called their counterclaim a "cross-claim." It was not a cross-claim, however, as it was filed after Austin had asserted his claim against them. Title 12 O.S.1991 § 2013.G provides that a "cross-claim" is "any claim by one party *who is not an opposing party*." [Emphasis added.] On the other hand, a claim "against any *opposing party*" is a "counterclaim." 12 O.S.1991 § 2013.A.

*loss*, not *liability*. Thus, held the trial court, the Cockings' indemnity claim was not ripe for adjudication.

### Case No. 90–197

In February 1990, the Cockings paid the Troxells $175,648.64 in full satisfaction of the Troxells' judgment. This amount included all accrued interest and attorneys' fees. The Cockings sued Austin for indemnity, but dismissed their case without prejudice after the trial court refused to allow them to amend and add a tort cause of action for misappropriation of funds and other claims of wrongdoing in the management of the Troxell Parts business.

### Case No. 90–412

In July 1990, the Cockings refiled their suit against Austin for the $175,648.64 that they had paid the Troxells. The Cockings claimed that Austin had breached his fiduciary duties, had colluded with bank officers, and misappropriated funds. Later, the Cockings amended their petition to include a second cause of action for indemnity for $87,-824.32, which amount was one-fourth of the total amount that Troxell Parts had owed the Troxells. The Cockings relied on the judgment in case No. 86–953 to ᵤupport their second cause of action for $87,824.32.

The case was tried to a jury. On the Cockings' first cause of action, breach of fiduciary duty, the jury found "the issues in favor of the Plaintiffs," but fixed "damages in the amount of $0." The jury awarded the Cockings $175,648.64 on their second cause of action for indemnity. The trial court entered the following judgment on the breach of fiduciary duty cause of action:

AGAINST: William R. Austin

IN FAVOR OF: Ronald W. Cockings and Bonnie H. Cockings on their first cause of action.

AMOUNT: $0.00

NATURE: Damages

The trial court ordered a remittitur of the indemnity verdict, which the Cockings accepted, reducing the judgment on the indemnity cause of action to $87,824.32. The Cockings moved for an attorneys' fee for the work done in obtaining judgment against Austin. The trial court awarded an attorneys' fee of $18,578.75. Austin appealed from the indemnity judgment and the attorneys' fee award. The Court of Appeals, Division 2, reversed the trial court's judgment in its entirety. We vacate the Court of Appeals opinion, and affirm the indemnity judgment. We reverse the trial court's judgment for the Cockings for $0.00 on the breach of fiduciary duty cause of action, and also reverse the order granting the Cockings an attorneys' fee.

In December 1993, Ronald W. Cockings filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Arkansas. The Bankruptcy Court lifted the automatic stay, and authorized Ronald W. Cockings's Bankruptcy Trustee to retain the Cockings counsel, Charles M. Laster, to represent the Trustee in this action.

### DISCUSSION

### I.

*The Jury's Verdict on the Cockings' First Cause of Action for Breach of Fiduciary Duty Resolved the Issue in Austin's Favor.*

 The jury's verdict on the breach of fiduciary duty cause of action was a defendant's verdict, because the jury awarded no damages. The trial court correctly instructed the jury, in its Instruction No. 17, that "In order to find a verdict in favor of Plaintiffs on their breach of fiduciary duty claim, you must first find by clear and convincing evidence: ... (4) that Plaintiffs were actually and proximately injured as a result of the complained-of act."

The jury found that the Cockings sustained no damages. A negligent act that does not cause damage will not support the imposition of liability, *Richards v. City of Lawton*, 629 P.2d 1260 (Okla.1981); *Loper v. Austin*, 596 P.2d 544 (Okla.1979). The trial court, therefore, erred in entering judgment for the Cockings on their breach of fiduciary duty claim. Thus, the breach of fiduciary duty cause of action and Austin's arguments concerning that cause of action are moot.

## II.

*The Cockings' Second Cause of Action for Indemnity was not Barred by Res Judicata—Claim Preclusion, or by the Statute of Limitations; nor was it a Compulsory Counterclaim Required to Be Filed in Case No. 88–662.*

Austin contends that in the Cockings' counterclaim in case No. 88–662 the Cockings asserted both their breach of fiduciary duty claim and their indemnity claim, based on the judgment in case No. 86–953. Austin claims that the Cockings' indemnity claim in the case at bar is thus barred under the doctrine of *res judicata*, or claim preclusion. The record does not support Austin's assertion.

We have carefully reviewed the Cockings' counterclaim, the pretrial order, the transcript of the parties' arguments, and the trial court's ruling granting Austin judgment on opening statement on the Cockings' counterclaim in case No. 88–662. These materials show that the Cockings did not raise their indemnity claim in their counterclaim. Instead, the Cockings relied on the judgment in case No. 86–953 only as an affirmative defense. Further, there is no judgment concerning the indemnity issue in case No. 88–662, as we reversed the judgment entered on the jury verdict in the Cockings' favor. The case has not been retried.

■ The doctrine of *res judicata*, which has been called claim preclusion in recent years, bars a party from litigating issues that were or could have been litigated in an earlier action between the same parties. *Erwin v. Frazier*, 786 P.2d 61 (Okla.1989). The Cockings' claim for indemnity in the case at bar arose in February 1990 when they paid the judgment the Troxells obtained against them. Case No. 88–662 was tried in November 1989, *before* the Cockings paid the Troxells' judgment. Thus, the Cockings had no indemnity cause of action during the course of the proceedings in case No. 88–662.

Austin claims that the judgment in case No. 86–953 was intended to indemnify the Cockings from liability rather than loss, and that the Cockings' indemnity claim is either barred by the statute of limitations, or was a compulsory counterclaim. We reject the contention that the judgment in case No. 86–953 was intended to indemnify the Cockings from liability, rather than loss, as did the trial court in case No. 89–233.

In case No. 89–233 the trial court, without objection by Austin, dismissed the Cockings' suit because it was "not ripe for adjudication and will not be until such time [as the Cockings pay the Troxells' judgment against them]" because the judgment in case No.86–963 indemnified the Cockings from *loss*, not *liability*. We will not, at this late date, interpret the final judgment in case No. 86–953 in a way that is inconsistent with the interpretation placed on it in another final judgment from the same court that entered the judgment in case No. 86–953.

■ The statute of limitations did not begin to run on the Cockings' indemnity cause of action until the Cockings paid the Troxells' judgment in February 1990. Consequently, the statute of limitations barred neither the Cockings' suit on the indemnity claim in case No. 90–197, nor their refiling of that claim in case No. 90–412. Similarly, the Cockings were not obliged to file their indemnity claim as a counterclaim in case No. 88–662, as their indemnity cause of action had not yet arisen.

## III.

*The Judgment of Indemnity in Case No. 86–953 is Not Void and Austin May Not Collaterally Attack it*

■ Austin claims that the trial court in case No. 86–953 lacked jurisdiction to enter the indemnity judgment because the judgment held Austin personally liable for Troxell Parts' corporate debt. According to Austin, his personal liability was not an issue before the court, so he claims that the judgment was void. This contention confuses jurisdiction with a possible error of law. The court in 86–953 had jurisdiction over the parties and the subject matter of the action. That the trial court's judgment went beyond the issues of the case, if indeed it did do so, did not deprive it of jurisdiction. A judgment may not be collaterally attacked for errors in the proceedings, even errors of law that appear

on the face of the record. *Lee v. Harvey,* 195 Okla. 178, 156 P.2d 134 (1945). "It is immaterial how irregular the proceedings might have been." Id. at 135. The judgment in case No. 86–953 was not appealed and became final. Austin may not collaterally attack it.

## IV.

*The Trial Court Erred in Granting the Cockings an Attorneys' Fee*

Austin contends that the trial court erred in entering an attorneys' fee for the Cockings. We agree. The Cockings prevailed only on their cause of action for indemnity. Thus, we must analyze the circumstances under which attorneys' fees may be awarded to successful indemnity claimants.

At the outset we must distinguish between (1) the attorneys' fees the Cockings incurred in seeking to obtain a judgment for indemnity against Austin in the case at bar, and (2) those they paid the Troxells. The trial court awarded the Cockings an attorneys' fee of the sort described in (1) in the preceding sentence. The portion of the fee of the kind described in (2), for which Austin was found liable, is accounted for in the Cockings $87,824.32 judgment against Austin.[2]

█ As a general rule, those indemnified from loss may recover attorneys' fees they expend in the defense of the claim indemnified against. Those indemnified, however, may not recover fees they incur in establishing their right to indemnity. *United General Insurance Co. v. Crane Carrier Co.,* 695 P.2d 1334, 53 ALR4th 405 (Okla.1984). "In the absence of express contractual terms to the contrary, an indemnitee may not recover legal fees incurred in establishing his right to indemnification." *Id.* at 1339. The trial court erred in granting the Cockings the attorneys' fees that they incurred in establishing their right to indemnity.

The trial court's judgment for the Cockings on their indemnity claim is affirmed. The trial court's judgment for $0.00 for the Cockings on their breach of fiduciary duty claim is reversed and judgment on the fiduciary duty claim is hereby entered for Austin. The trial court's attorney fee award is also reversed.

CERTIORARI PREVIOUSLY GRANTED, OPINION OF THE COURT OF APPEALS VACATED. JUDGMENT OF THE DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE and SUMMERS, JJ., concur.

OPALA, J., concurs in part, dissents in part.

---

2. The Troxells' judgment against the Cockings, which the Cockings paid in February 1990, included an attorneys' fee of $2,500.00.