**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 21 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MICHAEL B. GARRETT,

      Plaintiff-Appellant,

v.

BRYAN CAVE LLP, A Missouri
Professional Partnership/corporation;
STIFEL NICOLAUS & COMPANY,
INCORPORATED,

No. 98-6282

(D.C. No. 97-CV-165)
(W.D. Okla.)

ORDER AND JUDGMENT *

Before **BRISCOE** and **ANDERSON** , Circuit Judges, and **KIMBALL** , District
Judge. **

This case arises from plaintiff Michael B. Garrett's allegations against his

former counsel, defendant Bryan Cave LLP ("Bryan Cave"), and his former

employer, defendant Stifel, Nicolaus & Company, Inc. ("Stifel"). Garrett alleges

that Bryan Cave committed malpractice by disclosing confidential information

---

    * This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

    ** The Honorable Dale A. Kimball, United States District Judge for the
District of Utah, sitting by designation.

and by failing to protect his interests during a "proffer" session with the United States Attorney's office. According to Garrett, Bryan Cave's malpractice caused government officials to file insupportable criminal charges against him. The district court entered summary judgment for Bryan Cave, holding that Garrett could not establish causation and damages. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I

This litigation focuses on activities in Stifel's Oklahoma City municipal bond office. Garrett was employed by Stifel from 1987 through 1995. During that time he worked at Stifel's Oklahoma City office, which was headed by Robert Cochran. Bond issues that were underwritten by the Oklahoma City office came under suspicion in the early 1990s, spawning at least three lawsuits. Bond issuers filed a civil action in 1994 against Garrett and Stifel involving a Shawnee Hospital transaction (the " Shawnee litigation"). After conducting an investigation, the SEC filed a complaint against Garrett and other Stifel employees in 1995. The FBI and the United States Attorney's office conducted their own investigation, and filed criminal charges against Garrett and Cochran in 1995.

Bryan Cave represented Garrett during the Shawnee litigation and the SEC investigation. Bryan Cave attorney Tom Archer began representing Stifel and

2

Garrett in the Shawnee litigation in the Spring of 1994. The litigation concluded in late 1995. Garrett was initially represented by outside attorney Dino Viera in the SEC investigation, while Archer and other Bryan Cave attorneys represented Stifel. In 1994, Archer began representing Garrett in the SEC matter, and appeared on Garrett's behalf at one of Garrett's SEC interviews. Archer terminated his representation of Garrett in the SEC matter in August 1995.

On July 19, 1995, Bryan Cave attorneys participated in a proffer session with federal authorities on Stifel's behalf. Archer, Dan O'Neill of Bryan Cave, and Andy Coats from the law firm of Crowe & Dunlevy represented Stifel. Assistant United States Attorney ("AUSA") Susan Cox, FBI agent Michael Shook, and FBI agent Steven Kaitcer represented the government. Garrett was not present at the proffer session. On August 4, 1995, Stifel and the United States Attorney's office reached an agreement under which the government promised not to prosecute Stifel in exchange for Stifel's full cooperation in the investigation of its Oklahoma City office.

On September 20, 1995, the United States Attorney's office filed a criminal indictment against Garrett and Cochran. The indictment charged Garrett with mail and wire fraud in connection with certain bond transactions. Garrett moved to dismiss the indictment, arguing that the government's participation in the proffer session and its cooperation with Bryan Cave attorneys violated his

constitutional rights. After holding an evidentiary hearing, the court in the criminal case concluded that "[t]he evidence does not support Garrett's contention that the government's conduct was so egregious as to warrant dismissal under these circumstances." Appellant's Brief in Chief, Exh. A, at 10. [1] Garrett was acquitted of all charges against him at trial.

Garrett filed suit against Bryan Cave and Stifel in 1997. Garrett alleges that Bryan Cave disclosed sensitive information to federal prosecutors and failed to protect Garrett's interests before, during, and after the proffer session. According to Garrett, these purported breaches of duty led federal prosecutors to file unwarranted criminal charges against him. Garrett contends that he was forced to spend more than $135,000 to defend himself against these charges.

The district court entered judgment as a matter of law against Garrett on two grounds. The court concluded that no reasonable jury could find that Bryan Cave disclosed confidential or privileged information to the United States Attorney's office, and that no reasonable jury could conclude that Bryan Cave's alleged breaches of duty caused the government to indict Garrett. On appeal, Garrett contends that the trial court improperly granted summary judgment on the

---

[1] Bryan Cave argued before the district court that this order collaterally estopped Garrett from asserting that Bryan Cave's participation in the proffer session constituted a breach of duty. The district court rejected Bryan Cave's argument, see Appellant's Brief in Chief, Exh. A, at 8-12, and Bryan Cave has not raised the issue on appeal.

issue of causation by (1) applying a "but for" test instead of a "substantial factor" test; (2) ignoring or excluding evidence upon which a rational jury could have found in his favor; and (3) refusing to draw reasonable inferences in his favor from uncontested facts.

## II

We review de novo the grant or denial of a motion for summary judgment. As we explained in Craig v. Eberly , 164 F.3d 490 (10th Cir. 1998):

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.
>
> Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof. The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is genuine; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant.

Id. at 493 (citations and quotation marks omitted); accord Geoffrey E. MacPherson, Ltd. v. Brinecell, Inc. , 98 F.3d 1241, 1245 (10th Cir. 1996).

### A.  Garrett's Theories of Liability

Garrett's malpractice claim encompasses two theories of liability: "legal

5

negligence" and "breach of fiduciary duty." While Garrett claims in his Reply brief that the law of Oklahoma (rather than Missouri) should apply, neither party analyzes the choice-of-law issue in any detail. [2] Accordingly, the law of both jurisdictions is discussed below.

## 1. Negligence

Oklahoma and Missouri law clearly define the elements of a negligence claim against an attorney. To prevail on such a claim in Oklahoma, a plaintiff must prove "the existence of an attorney-client relationship, breach of duty by the attorney, facts constituting the alleged negligence, that the negligence was the proximate cause of the injury, and that but for the negligence the client would not have suffered damage." FDIC v. Ferguson, 982 F.2d 404, 406 (10th Cir. 1991) (citing Allred v. Rabon, 572 P.2d 979, 981 (Okla. 1977)); accord Erwin v. Frazier, 786 P.2d 61, 63-64 (Okla. 1989); Myers v. Maxey, 915 P.2d 940, 945 (Okla. Ct. App. 1996). A plaintiff asserting a claim for attorney malpractice under Missouri law must establish "(1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation of plaintiff's damages; (4) damages to the plaintiff." Klemme v. Best, 941 S.W.2d 493, 495 (Mo. 1997) (citing Donahue v. Shughart, Thomson & Kilroy, P.C., 900

---

[2] The district court found that the rules governing malpractice in Oklahoma and Missouri were substantially similar, and thus declined to resolve the choice-of-law issue. Appellant's Brief in Chief, Exh. A, at 7.

6

S.W.2d 624, 626 (Mo. 1995)).

### 2. Breach of Fiduciary Duty

Missouri law also clearly permits a plaintiff to sue an attorney for breach of fiduciary duty. The elements of such a claim include "(1) an attorney-client relationship; (2) breach of a fiduciary obligation by the attorney; (3) proximate causation; (4) damages to the client; (5) no other recognized tort encompasses the facts alleged." Id. at 496. However, "if the alleged breach can be characterized as both a breach of the standard of care (legal malpractice based on negligence) and a breach of a fiduciary obligation (constructive fraud), then the sole claim is legal malpractice." Id. In other words, to assert a claim for breach of fiduciary duty the alleged breach must be "independent of any legal malpractice." Id.

While no case provides definitive guidance, we assume without deciding that Oklahoma law likewise permits a plaintiff to sue his attorney for breach of fiduciary duty. To assert a claim for breach of fiduciary duty in other contexts, an Oklahoma plaintiff must demonstrate that he had a "special relationship" of confidence and trust with the defendant. See, e.g., Beshara v. Southern Nat'l Bank, 928 P.2d 280, 288-89 (Okla. 1996) (dismissing a breach of fiduciary claim for want of a "special relationship"); Swickey v. Silvey Companies, 979 P.2d 266, 269 (Okla. Ct. App. 1999) (same). Oklahoma courts hold that "a fiduciary relationship arises where one party reposes special confidence in another, as in

7

the case of attorney and client . . . ." Crockett v. Root, 146 P.2d 555, 559 (Okla. 1943); see also State ex rel. Oklahoma Bar Ass'n v. McKenzie, 788 P.2d 1370, 1378-79 (Okla. 1989) (stating that fiduciary obligations may "sprin[g] from an attitude of trust, confidence, and superior knowledge arising from the attorney-client relationship"). Other Oklahoma decisions similarly acknowledge that the attorney-client relationship is a fiduciary one. See, e.g., Panama Processes, S.A. v. Cities Serv. Co., 796 P.2d 276, 290 n.61 (Okla. 1990); In re Estate of Beal, 769 P.2d 150, 154-55 (Okla. 1989); Lowrance v. Patton, 710 P.2d 108, 111 (Okla. 1985); Renegar v. Bruning, 123 P.2d 686, 688 (Okla. 1942).

## B. The "Causation" Element

Our first task is to determine the amount of proof a plaintiff asserting a claim for malpractice must offer to satisfy the "causation" requirement. Bryan Cave contends that the traditional "but for" test applies to Garrett's negligence and breach of fiduciary duty claims. Garrett asserts that a more relaxed "substantial factor" test should apply, at least with respect to his breach of fiduciary duty claim. We conclude that neither Oklahoma nor Missouri has adopted a relaxed standard of causation for malpractice or breach of fiduciary claims.

### 1. Negligence

8

Oklahoma law requires proof of "but for" and "proximate" causation to sustain a claim for negligence. The Oklahoma Supreme Court held in Allred that a plaintiff suing his attorney for malpractice must demonstrate that a defendant's negligence "was proximate cause of an injury" and that "but for the negligence complained of the client would have succeeded in his action." 572 P.2d at 981. [3] Other cases interpreting Oklahoma law are in accord. E.g., FDIC, 982 F.2d at 406; see also Edwards v. International Union, United Plant Guard Workers of America, 46 F.3d 1047, 1051-52 n.2 (10th Cir. 1995) (citing Allred for the proposition that a plaintiff in a malpractice action "must prove he would have succeeded in the underlying action but for the attorney's negligence"); Collins v. Wanner, 382 P.2d 105, 108 (Okla. 1963) (indicating that a plaintiff in a malpractice action normally has "the difficult task of demonstrating that, but for the negligence complained of, the client would have been successful in the prosecution or defense of the action in question").

Missouri also requires proof of "but for" and "proximate" causation to sustain a negligence claim. A plaintiff in a negligence case must show that the defendant's conduct was "(1) the cause in fact; and (2) the proximate, or legal,

---

[3] To establish "proximate" causation, an Oklahoma plaintiff typically must show that his injury was foreseeable and a "natural and probable" consequence of the defendant's acts or omissions. Lockhart v. Loosen, 943 P.2d 1074, 1079 (Okla. 1997).

cause" of his injury. Jones v. Trittler, 983 S.W.2d 165, 167 (Mo. Ct. App. 1998) (citing Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 860-61 (Mo. 1993)). The first prong of the test "requires finding the event would not have occurred 'but for' the defendant's conduct." Id. Missouri courts emphasize that "[t]he 'but for' requirement is a minimum standard in most cases. Proximate cause also requires a measure of foreseeability in addition to 'but for' causation: the injury must be a reasonable and probable consequence of the act or omission of the defendant." Vittengl v. Fox, 967 S.W.2d 269, 278-79 (Mo. Ct. App. 1997) (citations omitted); accord State ex rel. Missouri Highway & Transp. Comm'n v. Dierker, 961 S.W.2d 58, 60 (Mo. 1998); Sansonetti v. City of St. Joseph, 976 S.W.2d 572, 577 (Mo. Ct. App. 1998).

### 2. Breach of fiduciary duty

Recognizing that his negligence claim requires evidence of "but for" causation, Garrett contends that a relaxed standard of proof should apply to his claim for breach of fiduciary duty. Garrett cites Milbank, Tweed, Hadley & McCloy v. Boon, 13 F.3d 537 (2d Cir. 1994) for the proposition that "[a]n action for breach of fiduciary duty is a prophylactic rule intended to remove all incentive to breach – not simply to compensate for damages in the event of a breach. . . . [B]reaches of a fiduciary relationship in any context comprise a special breed of cases that often loosen normally stringent requirements of causation and

10

damages." Id. at 543 (citation and quotation marks omitted, applying New York law); see also id. (stating that a plaintiff must show that the defendant's breach of duty was a "substantial factor" in the plaintiff's injury). Garrett also cites several cases from other states for the argument that a lesser standard of proof should apply. See, e.g., Cincinnati Ins. Co. v. Byers, 151 F.3d 574, 577, 579 (6th Cir. 1998) (stating that under Ohio law a plaintiff suing an attorney for negligence is not required to "prove in every instance that he or she would have been successful in the underlying matter(s)") (citation omitted); Daugherty v. Runner, 581 S.W.2d 12, 20 (Ky. Ct. App. 1978) (stating that an attorney's negligence must be a "substantial factor" in the plaintiff's injury).

Garrett's argument is unpersuasive. The main problem with Garrett's position is that he cannot cite any Oklahoma or Missouri law to support it. In Missouri, the rules governing causation are the same for malpractice claims sounding in negligence and breach of fiduciary duty. See Klemme, 941 S.W.2d at 496. In Oklahoma, a plaintiff asserting a breach of fiduciary duty claim must show that he was "actually and proximately injured as a result of the complained-of act." Cockings v. Austin, 898 P.2d 136, 139 (Okla. 1995). The Oklahoma Supreme Court's definition of "proximate" cause includes an element of "but for" causation. See McKellips v. Saint Francis Hosp., Inc., 741 P.2d 467, 470 (Okla. 1987) (stating that "proximate cause" encompasses both "legal" causation and

11

"but for" causation); Gaines v. Providence Apartments , 750 P.2d 125, 126-27 (Okla. 1987) ("The proximate cause of an event must be that which in a natural and continuous sequence, unbroken by an independent cause, produces the event and without which the event would not have occurred."); Johnson v. Mid-South Sports, Inc. , 806 P.2d 1107, 1109 (Okla. 1991) (same). Moreover, the Oklahoma Supreme Court has carefully limited exceptions to the "but for" test in the negligence context. See Hardy v. Southwestern Bell Tel. Co. , 910 P.2d 1024, 1037-30 (Okla. 1996) (restricting the application of a relaxed standard of causation to certain medical malpractice actions); see also id. at 1029 ( citing Daugert v. Pappas , 704 P.2d 600 (Wash. 1985) with approval, a legal malpractice case in which the Washington Supreme Court rejected a relaxed standard of causation). Thus, while neither Cockings nor Hardy squarely addresses the standard of proof for a breach of fiduciary duty claim against an attorney, they strongly suggest that exceptions to the rule of "but for" causation should be applied sparingly.

### C. The Parties' Evidence

The evidence upon which Garrett relies falls into two categories. The first category relates to Bryan Cave's alleged disclosure of sensitive information. The second relates to the causal connection between Bryan Cave's purported malpractice and the indictment. The district court correctly determined that none

12

of this evidence is sufficient to create a genuine issue of material fact.

## 1. Disclosure

Uncontested evidence demonstrates that no confidential or privileged information was disclosed during the proffer session. For example, AUSA Cox testified that she did not recall Garrett's name being mentioned during the proffer session, and that there was no discussion of any "strategy or tactics that Mr. Garrett's defense might use." Appellee's Supplemental Appendix ("Aplee. Supp. App."), Exh. C, at 704-05, 748-50. Attorney Coats also testified that he did not recall Garrett's name being mentioned at the proffer session. Bryan Cave attorney Archer testified that he did not provide prosecutors with confidential information or "any information in any way adverse to Mr. Garrett." Id. at 317; id., Exh. A, at 34-35. Archer, Bryan Cave attorney O'Neill, and agent Kaitcer further testified that Garrett's name only came up once during the proffer session, in connection with an unrelated matter. Finally, John Williams, who served as Garrett's personal counsel, testified that he had no knowledge of any privileged information that was divulged during the proffer session. In short, uncontradicted testimony from those with personal knowledge of what transpired at the proffer session establishes that, at most, Garrett's name came up once in connection with non-privileged information.

Garrett's attempt to avoid summary judgment on the issue of disclosure

13

revolves around two items of evidence. First, Garrett highlights a remark by AUSA Cox. In a letter to O'Neill regarding the proffer session, Cox stated that "Stifel attorneys then went on to express the opinion that they did have evidence available pointing to criminal culpability, and discussed such evidence as reflected in the notes." Appellant's Appendix ("Aplt. App."), Exh. A, at 376-78. Garrett then refers to a statement by O'Neill that at the time of the proffer session the "only person that [O'Neill] had heard the FBI purportedly [say] might be a target was Mike Garrett." Id. at 565. Second, Garrett emphasizes the testimony of his former counsel, Dino Viera. Viera testified that he found it "extremely difficult to believe that an attorney could investigate all of these matters for a period of over two years, then have a discussion with someone about those transactions, and not divulge either direct privileged communications or the fruit of those privileged communications." Id. at 80, 88.

Cox's "criminal culpability" remark falls far short of creating a genuine issue for trial. In her letter to O'Neill, Cox stated that Bryan Cave attorneys discussed evidence of criminal culpability "as reflected in the notes." Despite being given access to these notes, Garrett cannot identify any privileged information that was leaked to prosecutors. Moreover, Cox's "criminal culpability" remark does not even refer to Garrett. Cox herself testified that any discussion of "criminal culpability" at the proffer session focused on Cochran, not

14

Garrett. In the same vein, Archer and O'Neill testified that they did not believe the facts would support an indictment against Garrett at the time of the proffer session.

Viera's "expert" opinion that he found it "difficult to believe" that Bryan Cave attorneys did not divulge confidential information is also insufficient to prevent summary judgment. Viera admitted that he did not know what was said at the proffer session, and he cannot begin to describe the contents of privileged communications that were allegedly disclosed. We have previously recognized that "the testimony of an expert can be rejected on summary judgment if it is conclusory and thus fails to raise a genuine issue of material fact." Matthiesen v. Banc One Mortgage Corp., 173 F.3d 1242, 1247 (10th Cir. 1999); cf. United States v. Rice, 52 F.3d 843, 847 (10th Cir. 1995) (affirming the exclusion of expert testimony under Daubert because while "hypothesis may be an appropriate subject for expert testimony when based upon conclusions from established evidentiary facts," such hypothesis cannot be "based entirely on pure surmise"). In the words of the First Circuit,

> [t]he evidentiary rules regarding expert testimony at trial were "not intended . . . to make summary judgment impossible whenever a party has produced an expert to support its position." We are not willing to allow the reliance on a bare ultimate expert conclusion to become a free pass to trial every time that a conflict of fact is based on expert testimony. . . . Where an expert presents "nothing but conclusions – no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected", such testimony

15

will be insufficient to defeat a motion for summary judgment.

Hayes v. Douglas Dynamics, Inc._, 8 F.3d 88, 92 (1st Cir. 1993) (citations omitted); see also Weigel v. Target Stores, 122 F.3d 461, 468-69 (7th Cir. 1997) ("[A] party cannot assure himself of a trial merely by trotting out in response to a motion for summary judgment his expert's naked conclusion about the ultimate issue.") (citation omitted).

### 2. Causation

Even if Garrett could establish that confidential information was conveyed to the government, summary judgment would still be warranted on the issue of causation. Uncontested evidence demonstrates that Bryan Cave's conduct did not cause federal prosecutors to indict Garrett. For instance, agent Kaitcer testified that the government did not learn anything at the proffer session that "affected the scope or the direction of the criminal investigation." Aplee. Supp. App., Exh. C, at 593. AUSA Cox similarly testified that she did not learn anything she did not already know at the proffer session, and that the session did not influence the indictment against Garrett. Cox also testified that the indictment against Garrett had been drafted and presented to the "in-office indictment review committee" prior to the proffer session, and that the session did not lead to any changes in the indictment. Id. at 695-96. Along the same lines, Garrett's criminal defense counsel was unable to convince the U.S. Attorney's office that it should not

16

prosecute Garrett.

This evidence notwithstanding, Garrett insists that a reasonable jury could find in his favor on the issue of causation. First, Garrett points to the non-prosecution agreement that Bryan Cave attorneys helped negotiate for Stifel. Garrett suggests that a similar agreement could have been obtained for him, and observes that Stifel's agreement potentially required the company to cooperate with the government at Garrett's expense. Second, Garrett stresses the timing of the indictment. Garrett notes that in response to subpoenas, Bryan Cave attorneys assisted in the production of documents containing payroll information and information about a transaction that was at issue in the SEC and FBI investigations. On September 20, 1995, the day after some of Garrett's payroll records were produced, the United States Attorney's office filed criminal charges against Garrett. Third, Garrett contends that he explained complicated bond transactions to Bryan Cave attorneys, and that the attorneys later used this information to explain the transactions to prosecutors. Garrett asserts that in 1993, while he was still being represented by Viera, he discussed the subject matter of the SEC investigation with Archer. Viera testified that in the 1993 meeting Garrett "educated" Archer about particular bond transactions, because

17

Archer was "behind on the learning curve." Aplt. App., Exh. A, at 67-68. [4]

Once again, this evidence falls far short of creating a genuine issue for trial. First, the non-prosecution agreement is insufficient to sustain an inference of causation. Agent Kaitcer and AUSA Cox unequivocally testified that the proffer session affected neither the investigation nor the indictment. In view of this testimony, it would be unreasonable for the jury to infer either that the resultant agreement "imbued the prosecutorial team with the confidence it needed to prosecute Garrett criminally," see Aplt. Brief in Chief at 3, or that Garrett could have avoided criminal charges if Bryan Cave had actively defended his interests at the proffer session. Furthermore, the non-prosecution agreement required Stifel, not Bryan Cave, to provide documents and cooperate with federal investigators. Second, the mere fact that Garrett was indicted shortly after the production of his payroll records does not prove that the latter caused the former. See, e.g., Sunward Corp. v. Dun & Bradstreet, Inc., 811 F.2d 511, 521 & n.8

_____

[4] Garrett also claims that the following facts support his theory of causation: (1) Bryan Cave attorneys were aware in the Spring of 1994 that, in addition to the SEC, the FBI was investigating Stifel and its employees; (2) prior to the proffer session, Bryan Cave attorneys knew that Garrett had been contacted by and was a potential target of the FBI; (3) Bryan Cave attorneys did not personally inform Garrett of the proffer session or obtain Garrett's permission to negotiate a deal on Stifel's behalf; and (4) Bryan Cave attorneys did not present exculpatory evidence or otherwise attempt to obtain an agreement with federal prosecutors on Garrett's behalf. However, these alleged facts relate to the issue of whether Bryan Cave was negligent or breached a fiduciary duty, not whether Bryan Cave's actions caused the government to indict Garrett.

(10th Cir. 1987) (rejecting evidence based on "reasoning from sequence to consequence, that is, assuming a causal connection between two events merely because one follows the other") (citation omitted). Third, nothing in the record suggests that Bryan Cave's purported tutorial had any influence on the government's decision to indict Garrett.

Garrett also argues that the testimony of expert witness Joel Wohlgemuth precludes summary judgment. Wohlgemuth testified that he believed the decision to indict Garrett "had to be based in part upon that proffer session," and that he was "not confident that Garrett would have been indicted had his counsel used that window to address the problems that he had as well as the problems that Stifel had." Aplt. App., Exh. I, at 15, 19. Wohlgemuth also testified that he believed Garrett was harmed "by not being afforded the opportunity that was given to Stifel by Bryan Cave to be the first in to engage in a proffer session" and by "not having the benefit of continuity of counsel." Id. at 13.

Garrett's argument misses the mark. Wohlgemuth acknowledged that his "experience" was the only basis for his conclusion that Garrett was harmed by "not being afforded the opportunity . . . to be the first in to engage in a proffer session" and by "not having the benefit of continuity of counsel." Id. at 13. The only specific fact discussed in Wohlgemuth's testimony is the "criminal culpability" remark in Cox's letter – a remark that has little probative value on

19

the issue of disclosure, and no probative value as to whether the information allegedly disclosed caused the government to indict Garrett. Under cases such as Matthiesen, Hayes, and Weigel, Wohlgemuth's unsupported opinion (like Viera's) cannot forestall summary judgment. See also Black v. Baker Oil Tools, Inc., 107 F.3d 1457, 1460 (10th Cir. 1997) (citing Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) for the proposition that "[s]ummary judgment may be granted if the evidence is merely colorable or is not significantly probative").[5]

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[5] Although the element of causation often presents issues of fact for the jury, summary judgment in this case is consistent with Oklahoma and Missouri law. Oklahoma courts recognize that "[t]he question of proximate cause becomes one of law when there is no evidence from which the jury could find a causal nexus between the negligent act and the resulting injuries." Elledge v. Staring, 939 P.2d 1163, 1165 (Okla. Ct. App. 1996) (citing Thompson v. Presbyterian Hosp., Inc., 652 P.2d 260, 263 (Okla. 1982)). "When the matter is one of pure speculation or conjecture or the probabilities evenly balanced," judgment as a matter of law is proper. Hardy, 910 P.2d at 1027; see also Butler v. Oklahoma City Pub. Sch. Sys., 871 P.2d 444, 446 (Okla. Ct. App. 1994) (granting summary judgment for the defendant and commenting that "[s]peculation is the antithesis of proximate cause"). Missouri courts similarly recognize that "[e]vidence of causation must be based on probative facts and not on mere speculation or conjecture." Bond v. California Compensation & Fire Co., 963 S.W.2d 692, 697 (Mo. Ct. App. 1998); accord Stanley v. City of Independence, 995 S.W.2d 485, 488 (Mo. 1999); Brison v. O'Brien, 645 S.W.2d 142, 145-46 (Mo. Ct. App. 1982).

20