**CINCINNATI INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Fritz BYERS, Defendant–Appellee.**

No. 97–3389.

United States Court of Appeals, Sixth Circuit.

Argued June 9, 1998.

Decided Aug. 12, 1998.

Lisa A. Hesse (argued and briefed), Stephen C. Findley (briefed), Freund, Freeze & Arnold, Dayton, Ohio, for Plaintiff–Appellant. Richard S. Walinski (briefed), Cooper, Walinski & Cramer, Toledo, Ohio, Gerald R. Kowalski (argued and briefed), Manahan, Pietrykowski, Bamman & DeLaney, Toledo, Ohio, for Defendant–Appellee.

Before: BATCHELDER, DAUGHTREY, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Cincinnati Insurance Company ("CIC") brought an action for legal malpractice against attorney Fritz Byers ("Byers"), alleging that Byers negligently failed to perfect an appeal from an Ohio state-court judgment entered against H.U. Tuttle & Sons, Inc. ("Tuttle"), an insured of CIC. The district court, on cross-motions for summary judgment, ruled in favor of Byers and entered judgment accordingly. The district court thereafter denied CIC's motion for relief from operation of the judgment brought under Rule 60(b)(6) of the Federal Rules of Civil Procedure. CIC now appeals from both the judgment and the denial of its Rule 60(b)(6) motion. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings.

## I.  BACKGROUND

Tuttle served as the general contractor on a construction project for B.P. Chemicals, Inc. ("B.P.") in Lima, Ohio. The various steel-erection tasks were subcontracted to Don R. Fruchey, Inc. ("Fruchey"), which employed Benjamin Colter ("Colter") as its job foreman. In May of 1989, Colter fell approximately 35 feet from a structural steel skeleton located on the job site and died shortly thereafter from severe internal injuries. At the time of Colter's fall and death, neither Tuttle nor Fruchey had supplied any ·fall-protection equipment in the, form of safety

belts, lanyards, safety lines, safety nets, temporary flooring, or cable-and-lanyard systems. The absence of such equipment violated the Occupational Safety and Health Act, Ohio Industrial Commission regulations, and the standards of the Associated General Contractors of America.

Colter's widow, as administrator of Colter's estate, brought an action for wrongful death against Tuttle and others in Ohio state court ("the Colter action"), alleging that Tuttle negligently failed to provide Colter with a safe place of work. CIC was obligated under a policy of insurance to indemnify and defend Tuttle regarding the Colter action.

The case was tried before a jury in June of 1994. Before charging the jury, the trial court, on its own initiative, determined that (1) an indemnity provision contained in the contract entered into between B.P. and Tuttle created a non-delegable duty on the part of Tuttle to provide Colter with a safe place of work, and (2) Tuttle breached that duty as a matter of law by failing to comply with the applicable job-safety regulations. The trial court overruled various objections made by Tuttle's trial counsel with respect to the proposed jury charge, which embodied the foregoing rulings. Consequently, the trial court submitted to the jury only the issues of proximate cause, damages, and comparative negligence. The jury returned a verdict awarding $1,900,000 in damages to Colter's estate. The award was reduced by 20% to account for Colter's own negligence, resulting in a net award of $1,520,000. In July of 1994, the trial court entered judgment in the amount of $1,520,000 against Tuttle ("the Colter judgment").

CIC then retained Byers to appeal the Colter judgment to the Ohio Court of Appeals on Tuttle's behalf. In its brief, which Byers prepared and filed, Tuttle asserted that the trial court had erred in instructing the jury that Tuttle breached a duty owed to Colter as a matter of law. Tuttle argued in support of its position that: (1) the indemnity provision contained in the Tuttle–B.P. contract did not create a duty enforceable by a third party such as Colter, and (2) even if Colter could enforce such a duty, Fruchey's

noncompliance with applicable job-safety regulations did not establish that Tuttle breached that duty as a matter of law.

The Ohio Court of Appeals did not address the merits of the arguments submitted in Tuttle's brief. Instead, the appeal was dismissed as a result of Byers's failure to timely file the trial transcript and record on appeal, or to move for an extension of time to do so. CIC alleges that counsel for Colter's estate was actively pursuing a settlement of the Colter action during the pendency of the appeal in the summer of 1994. Byers, on the other hand, asserts that the only settlement activity with respect to the Colter action occurred after the appeal was dismissed. CIC claims that upon such dismissal, CIC lost bargaining leverage derived from the pendency of the appeal and therefore lost an opportunity to obtain a more favorable settlement. Having no other recourse, CIC settled the Colter action in January of 1995 for $1,450,000.

In January of 1996, CIC brought an action for legal malpractice against Byers in Ohio state court. CIC's complaint alleged that Byers's failure to timely file the trial transcript and the record on appeal (or to move for an extension of time to do so) with the Ohio Court of Appeals caused the dismissal of an otherwise meritorious appeal from the Colter judgment. Byers timely removed the action to the United States District Court for the Northern District of Ohio.

In November of 1996, CIC and Byers filed cross-motions for summary judgment on the issue of proximate cause (the other issues of duty and breach of duty being reserved by agreement). CIC acknowledged in its brief that under *Jablonski v. Higgins*, 6 Ohio Misc.2d 8, 10, 453 N.E.2d 1296 (Ohio Com.Pl. 1983), a plaintiff bringing an action for legal malpractice arising from appellate representation bears the burden of proving that "if an appeal had been perfected, a reversal or a more favorable judgment would have resulted." 453 N.E.2d at 1298. That issue, in turn, revolved around the parties' competing arguments as to whether Tuttle's trial counsel adequately preserved the trial court's alleged errors for appellate review by making a timely and specific objection. Byers ar-

gued that Tuttle failed to object to the trial court's rulings with sufficient specificity. CIC, on the other hand, asserted that Tuttle preserved the errors by way of a general objection to the proposed charge. Alternatively, CIC contended that the trial court's rulings constituted plain error and thus were reviewable on appeal notwithstanding the absence of a timely and specific objection.

The district court, in a judgment filed on March 6, 1997, contemporaneously granted Byers's motion for summary judgment and denied the one filed by CIC. In so ruling, the district court, citing *Jablonski,* framed the threshold issue as whether the Ohio Court of Appeals would have reversed the Colter judgment if Byers had properly perfected the appeal. The district court concluded that Tuttle had not preserved the Ohio trial court's rulings for appellate review because Tuttle's trial counsel did not timely and specifically object to the proposed jury charge. Moreover, the district court concluded that the Ohio trial court's rulings did not rise to the level of plain error. The district court held, therefore, that CIC could not establish that Byers's failure to perfect the appeal proximately caused CIC's damages because the Ohio Court of Appeals would still have affirmed the Colter judgment.

On March 7, 1997, one day after the filing of the judgment disposing of the parties' cross-motions for summary judgment, CIC filed with the district court a supplemental memorandum in support of its motion for summary judgment and in opposition to the one filed by Byers. This document, which crossed in the mail with the judgment, brought to the district court's attention the case of *Vahila v. Hall,* 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997), a new decision in point which the Ohio Supreme Court had just decided on February 12, 1997.

In *Vahila,* the plaintiffs sued two attorneys and a law firm ("the attorney defendants") for damages arising from their representation in various civil, criminal, and administrative proceedings. The attorney defendants moved for summary judgment, arguing that the plaintiffs had failed to establish damages proximately caused by the alleged malpractice of the attorney defendants because the

plaintiffs could not demonstrate that they (the plaintiffs) would have been successful in the underlying proceedings. The trial court ruled in favor of the attorney defendants on that basis, and the Ohio Court of Appeals affirmed. In reversing the Ohio Court of Appeals, the Ohio Supreme Court first addressed its prior decision in *Krahn v. Kinney,* 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989), which held that a plaintiff can state a cause of action for legal malpractice without having to allege that he or she would have prevailed in the underlying criminal proceeding but for the malpractice. 538 N.E.2d at 1061. Expanding upon the principles set forth in *Krahn,* the *Vahila* court stated as follows:

> [W]e reject any finding that the element of causation in the context of a legal malpractice action can be replaced or supplemented with a rule of thumb requiring that a plaintiff, in order to establish damage or loss, prove in every instance that he or she would have been successful in the underlying matter(s) giving rise to the complaint. *This should be true regardless of the type of representation involved.*

674 N.E.2d at 1168–69 (emphasis added). In so holding, the court noted that a standard requiring every legal-malpractice claimant to prove that he or she would have succeeded in the underlying matter "would be unjust, making any recovery virtually impossible for those who truly have a meritorious legal malpractice claim." *Id.* at 1170. The court relied upon the following criticism contained in Note, *The Standard of Proof of Causation in Legal Malpractice Cases,* 63 Cornell L.Rev. 666, 670–71 (1978):

> A standard of proof that requires a plaintiff to prove to a virtual certainty that, but for the defendant's negligence, the plaintiff would have prevailed in the underlying action, in effect immunizes most negligent attorneys from liability....
>
> A strict "but for" test also ignores settlement opportunities lost due to the attorney's negligence ....

(emphasis added); *see* 674 N.E.2d at 1169. The court did acknowledge, however, that because "the requirement of causation often dictates that the merits of the malpractice

action depend upon the merits of the underlying case[,]" a plaintiff "may be required, in some instances, to provide some evidence of the merits of the underlying claim." *Vahila,* 674 N.E.2d at 1170 (citations omitted).

CIC argued in its supplemental memorandum that *Vahila* "significantly altered the proximate cause test in legal malpractice cases, and calls for the denial of [Byers's] motion [for summary judgment]." CIC contended that "*Vahila* looked to the lost settlement opportunity caused by the malpractice rather than a hard and fast rule requiring [CIC] to show it would have been successful in the underlying case."

On March 19, 1997, CIC filed a motion for relief from operation of the judgment pursuant to Rule 60(b)(6), citing an intervening change in the controlling law. In support of its motion, CIC incorporated the arguments presented to the district court in the supplemental memorandum and added that the judgment "is contrary to the newly announced law of the State of Ohio contained in the *Vahila* case." Byers asserted in opposition to CIC's motion that *Vahila* did not change Ohio law as claimed by CIC. Rather, Byers argued, "*Vahila* followed and reaffirmed precisely the same rule that [the district court] followed in its opinion: the rule announced in *Krahn.*"

The district court denied CIC's Rule 60(b)(6) motion in an order entered on May 7, 1997. Although acknowledging that an intervening change in controlling law would justify relief from the judgment under Rule 60(b)(6), the district court concluded that *Vahila* created no change in controlling law as it relates to CIC's action because *Vahila*'s holding does not apply to an action for legal malpractice arising from *appellate* representation.

CIC now appeals from both the judgment and the denial of its Rule 60(b)(6) motion.

## II. ANALYSIS

CIC argues on appeal that the district court erroneously applied a proximate-cause standard which requires proof that a reversal or a more favorable judgment would have resulted if Byers had perfected the appeal from the Colter judgment. It contends that the district court failed to apply *Vahila* and thus did not consider evidence of CIC's lost settlement opportunity allegedly caused by Byers' negligence. CIC also argues that the district court abused its discretion in denying CIC's Rule 60(b)(6) motion because *Vahila* constitutes an intervening change in the controlling law which, if applied, would have inured to CIC's benefit in the summary-judgment proceedings. Accordingly, CIC contends that this matter involves extraordinary circumstances warranting relief from operation of the judgment under Rule 60(b)(6).

Byers, on the other hand, maintains that the district court properly denied CIC's motion because *Vahila* effected no change to Ohio law. Byers also asserts that even if *Vahila* did effect such a change, the denial of CIC's motion was proper because a change in controlling law does not in itself constitute extraordinary circumstances warranting Rule 60(b)(6) relief.

A district court should grant relief from operation of a judgment under Rule 60(b)(6) when it determines in its sound discretion that substantial justice would be served. *See Overbee v. Van Waters & Rogers,* 765 F.2d 578, 580 (6th Cir.1985). Such relief, however, should be applied "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of [Rule 60(b) ]." *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir.1989). "A claim of strictly legal error falls in the category of 'mistake' under Rule 60(b)(1) and thus is not cognizable under 60(b)(6) absent extraordinary circumstances." *Id.* Moreover, a Rule 60(b)(6) motion that claims legal error as justification for the relief sought must be brought within the time permitted to appeal from the judgment in question. *See Steinhoff v. Harris,* 698 F.2d 270, 276 (6th Cir.1983). Because this court reviews the disposition of such a motion for abuse of discretion, the district court's ruling will be affirmed unless this court is left with a "definite and firm conviction that the trial court committed a clear error of judgment."

*Logan v. Dayton Hudson Corp.,* 865 F.2d 789, 790 (6th Cir.1989).

■ The district court, in denying CIC's Rule 60(b)(6) motion, acknowledged that *Vahila* would have mandated reconsideration of its summary-judgment rulings had CIC's action alleged legal malpractice at the trial level. It concluded that reconsideration was unwarranted in the present matter, however, because CIC's action alleged legal malpractice at the appellate level and that *Vahila* is not applicable to such an action. The district court apparently based its conclusion upon the reasoning of *Jablonski v. Higgins,* 6 Ohio Misc.2d 8, 453 N.E.2d 1296 (Ohio Com.Pl. 1983), which held that a plaintiff must prove that "if an appeal had been perfected, a reversal or a more favorable judgment would have resulted" in order to succeed on a claim for appellate malpractice. 453 N.E.2d at 1298.

We are satisfied that the district court's determination that *Vahila* is inapplicable to legal-malpractice actions arising from appellate representation is inconsistent with the sweeping language employed by the Ohio Supreme Court. Again, *Vahila* held as follows:

> [W]e reject any finding that the element of causation in the context of a legal malpractice action can be replaced or supplemented with a rule of thumb requiring that a plaintiff, in order to establish damage or loss, prove in every instance that he or she would have been successful in the underlying matter(s) giving rise to the complaint. *This should be true regardless of the type of representation involved.*

674 N.E.2d at 1168–69 (emphasis added).

The foregoing language is significant for two reasons. First, the Ohio Supreme Court explicitly rejected the notion that a plaintiff asserting a claim for legal malpractice is required in all instances to prove that the plaintiff would have prevailed in the underlying proceeding giving rise to the action. Second, the Ohio Supreme Court emphasized that its holding is not confined to any particular type of representation. Indeed, *Vahila* itself was a legal-malpractice action arising from representation in three types of proceedings: civil, criminal, and administrative.

Although not expressly covered by its holding, nothing in *Vahila* supports the conclusion that the Ohio Supreme Court intended to exclude legal malpractice arising from appellate representation. We are therefore satisfied that *Vahila* overruled *Jablonski's* requirement that a plaintiff alleging appellate-level malpractice must prove that a reversal or a more favorable judgment would have resulted if an appeal had been perfected.

■ The Ohio Supreme Court handed down *Vahila* less than one month before the district court's ruling on the parties' cross-motions for summary judgment. CIC attempted in its supplemental memorandum to present its *Vahila*-related arguments to the district court for consideration in connection with the pending cross-motions. The supplemental memorandum, however, did not reach the district court until one day after the filing of the judgment. Unless relief from the judgment is granted to CIC pursuant to Rule 60(b)(6), it will lose the right to assert its *Vahila*-related theory simply because the district court fortuitously ruled one day before the submission of the supplemental memorandum.

CIC relies primarily upon *Overbee v. Van Waters & Rogers,* 765 F.2d 578 (6th Cir. 1985), in support of its position that the instant matter presents extraordinary circumstances warranting Rule 60(b)(6) relief. *Overbee* involved a products-liability action based upon Ohio law. The action accrued in November of 1977 and was tried in March of 1981. The district court instructed the jury on contributory negligence, rather than on comparative negligence as requested by the plaintiff. The jury rendered a verdict in favor of the defendants, and the district court entered judgment accordingly. The plaintiffs appealed the district court's rulings to this court.

During the pendency of the appeal, the Ohio Supreme Court ruled that recent legislation substituting comparative negligence for contributory negligence applied only to actions *accruing* after June 20, 1980. *Viers v. Dunlap,* 1 Ohio St.3d 173, 438 N.E.2d 881 (1982). The plaintiffs thus conceded on ap-

peal that *Viers* settled the issue as to the applicability of comparative negligence relating to their action. This court, however, reversed the district court's judgment on other grounds and remanded the case for further proceedings. While the case was on remand, the Ohio Supreme Court unexpectedly reversed *Viers* and held that comparative negligence applied to actions *tried* after June 20, 1980. *Wilfong v. Batdorf*, 6 Ohio St.3d 100, 451 N.E.2d 1185 (1983). The plaintiffs then filed a Rule 60(b)(6) motion for relief from operation of the judgment. After the district court denied the motion, the plaintiffs brought a second appeal to this court. In holding that the district court abused its discretion in denying the Rule 60(b)(6) motion, this court stated as follows:

> [W]e think this case presents extraordinary circumstances justifying relief from the April 3, 1981, judgment. The action of the Ohio Supreme Court in reversing itself within one year is certainly an unusual occurrence. Had that court reached the decision in *Viers, supra,* that it ultimately reached in *Wilfong, supra,* plaintiffs would have prevailed on the instruction issue during the first appeal to this court.

*Overbee*, 765 F.2d at 580 (citations omitted). This court concluded that "justice would not be served by penalizing plaintiffs for the actions of the Ohio Supreme Court." *Id.* at 581.

We are similarly of the view that the district court in the present matter abused its discretion by denying Rule 60(b)(6) relief to CIC. In denying the motion, the district court erroneously concluded that *Vahila* is inapplicable to legal-malpractice actions arising from appellate representation. Moreover, the instant matter presents extraordinary circumstances because of the significant change in Ohio law that occurred less than a month before the district court ruled upon the parties' cross-motions for summary judgment. Finally, CIC is entitled to relief from operation of the judgment under Rule 60(b)(6) because such relief would serve substantial justice. *See Overbee*, 765 F.2d at 580. Justice would certainly not be served by penalizing CIC for the failure of the district court to consider the controlling law of Ohio at the time of the disposition of the parties' cross-motions for summary judgment. *Id.* Under these circumstances, we are left with a definite and firm conviction that the district court committed a clear error of judgment in denying CIC's Rule 60(b)(6) motion. *See Logan v. Dayton Hudson Corp.,* 865 F.2d 789, 790 (6th Cir.1989).

We wish to emphasize, however, that our decision to relieve CIC from operation of the judgment under Rule 60(b)(6) is not to be construed as any indication concerning the likelihood that CIC will prevail in its legal-malpractice action against Byers. Whether CIC is able to come forward with sufficient evidence to establish a viable claim for its lost settlement opportunity resulting from the dismissal of Tuttle's appeal on procedural grounds will be for the district court to determine on remand. We simply hold that CIC should be afforded the opportunity under *Vahila* to proceed forward with such a claim.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.