ELECTRONIC CITATION: 2004 FED App. 0005P (6th Cir.)
File Name: 04b0005p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: SIRAK W. GEBEREGEORGIS, | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SIRAK W. GEBEREGEORGIS, | ) | |
| Debtor-Appellee, | ) | |
| v. | ) | No. 03-8007 |
| AL GAMMARINO, | ) | |
| _____ Creditor-Appellant. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Western Division at Cincinnati
No. 00-11047

Submitted: February 4, 2004

Decided and Filed: May 24, 2004

Before: LATTA, RHODES, and WHIPPLE, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF**: Al Gammarino, Cincinnati, Ohio, for Appellant. Eric W. Goering, Cincinnati, Ohio, for Appellee.

## OPINION

MARY ANN WHIPPLE, Bankruptcy Appellate Panel Judge. Creditor Al Gammarino (Gammarino) appeals the bankruptcy court's order granting Debtor Sirak W. Geberegeorgis' (Debtor) motion to vacate its prior order dismissing Debtor's Chapter 13 case and allowing him to resume performance of his confirmed Chapter 13 plan. The bankruptcy court determined that cause existed for vacating the dismissal order because the conditions that resulted in dismissal, namely Debtor's illness and failure to make plan payments, had been resolved, and Gammarino would not be prejudiced by reinstatement of the case. The Panel finds that the bankruptcy court did not abuse its discretion in vacating the prior order of dismissal and **AFFIRMS** the bankruptcy court's order.

## I.    ISSUE ON APPEAL

The issue is whether the bankruptcy court abused its discretion by vacating its order of dismissal and allowing Debtor to resume performance of his confirmed Chapter 13 plan.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Panel has jurisdiction to decide this appeal from a final order of the bankruptcy court. The United States District Court for the Southern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel. 28 U.S.C. § 158 (b). The "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1).

For purposes of appeal, the Supreme Court defines an order as final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct.. 1494, 1497 (1989) (internal quotations and citations omitted). Courts view the concept of finality in a more pragmatic and flexible way in bankruptcy proceedings than in other civil proceedings, "[t]o avoid the waste of time and resources that might result from reviewing discrete portions of the action only after [a bankruptcy case concludes or] a plan of reorganization is

2

approved." *Lindsey v. O'Brien, Tanski, Tanzer &Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 488 (6th Cir. 1996); *see Cottrell v. Shilling (In re Cottrell)*, 876 F.2d 540, 541-42 (6th Cir. 1989). Accordingly, an order that concludes a particular adversarial matter within the larger case should be deemed final and reviewable in a bankruptcy setting. *Lindsey*, 86 F.3d at 488; *In re James Wilson Assocs.*, 965 F.2d 160, 166, (7th Cir. 1992); *Martin Bros. Toolmakers, Inc. v. Indus. Dev. Bd. (In re Martin Bros. Toolmakers, Inc.)*, 796 F.2d 1435, 1437-38 (11th Cir. 1986).

Upon dismissal of the case, Gammarino was permitted to pursue his collection rights and remedies free of the automatic stay and Debtor's confirmed Chapter 13 plan. *In re Hill*, 305 B.R. 100, 105 (Bankr. M.D. Fla. 2003) ("Although a case may remain open after dismissal, the automatic stay of § 362 of the Bankruptcy Code terminates when the case is dismissed."). Vacation of the dismissal order reinstated Debtor's Chapter 13 case, and Gammarino's rights under the confirmed Chapter 13 plan. At that point, all that was left to do was Debtor's performance and the Chapter 13 Trustee's administration of Debtor's already confirmed Chapter 13 plan. Absent separate future defaults or other disputes related to the confirmed Chapter 13 plan, there were no further orders required by the bankruptcy court and Gammarino was again bound by the terms of the plan. 11 U.S.C. § 1327(a). The order vacating the dismissal concluded the dispute over dismissal such that it is a final order immediately appealable by Gammarino without waiting until completion of the Chapter 13 plan and Debtor's discharge. *See* 11 U.S.C. §§ 1322(d), 1328.

In addition, the procedural basis for the bankruptcy court's order was ultimately Fed. R. Civ. P. 60(b), which applied to Debtor's Chapter 13 case through Fed. R. Bankr. P. 9024. The Sixth Circuit has held that an order ruling on a Rule 60(b) motion is appealable. *Mallory v. Eyrich*, 922 F.2d 1273, 1277 (6th Cir. 1991) (citing *Browder v. Director, Illinois Dept. of Corrections*, 434 U.S. 257, 263 n. 7 (1978); *Honneus v. Donovan*, 691 F.2d 1, 2 (1st Cir. 1982)).

The granting of relief under Fed. R. Civ. P. 60(b) is reviewed for abuse of discretion. *Mallory,* 922 F.2d at 1279; *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998). Therefore, the Panel will affirm the order presently on appeal unless the Panel has "a

definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Union Oil Co. of Cal. v. Serv. Oil Co.,* 766 F.2d 224, 227 (6th Cir. 1985); *Cincinnati Ins. Co.,*151 F.3d at 578. "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs. (In re M.J. Waterman & Assocs.),* 227 F.3d 604, 608 (6th Cir. 2000) (citations omitted).

## III.    FACTS

Debtor filed his Chapter 13 petition in the United States Bankruptcy Court for the Southern District of Ohio on March 1, 2000.  Among his assets is his business, a Dairy Mart, located in Cincinnati, Hamilton County, Ohio.  The business property is subject to a first mortgage held by Provident Bank and a second mortgage held by Gammarino.  The bankruptcy court confirmed Debtor's Chapter 13 plan on March 22, 2001, overruling Gammarino's objections.

Debtor was hospitalized for congestive heart failure in September of 2002.  Debtor fell behind in his plan performance obligations, missing  payments outside of the plan on the first mortgage to Provident Bank; monthly plan payments to the Chapter 13 Trustee due in August, September and October, 2002; and payment of post-petition real property taxes.  As a result, the bankruptcy court granted Provident Bank relief from stay on September 24, 2002.  The Chapter 13 Trustee also filed on September 18, 2002, and properly noticed and served, a motion to dismiss the case due to Debtor's failure to make plan payments.  Debtor did not oppose the Chapter 13 Trustee's motion to dismiss, and on October 17, 2002, the bankruptcy court granted the motion.

Shortly thereafter, on October 28, 2002, Debtor  filed a motion to reopen the case, vacate the dismissal order and resume payments.  Gammarino filed a written objection to Debtor's motion.  The Chapter 13 Trustee also initially opposed Debtor's motion.  Prior to the hearing, Debtor, Provident Bank, and the county taxing authorities reached an agreement whereby Debtor could bring his delinquent post-petition payments current.

4

At the hearing, Gammarino opposed vacating the dismissal order and reinstating the case. His primary objections were that 11 U.S.C. § 350 did not support the relief requested and that he would be prejudiced by reinstating Debtor's Chapter 13 case. A representative of the Chapter 13 Trustee's office reported that Debtor had provided requested business reports and had been able to make two of the missed plan payments, each in the amount of $3,650.00, immediately before the hearing. With a permitted suspension of the missed payments, which the bankruptcy court also granted, Debtor's plan could still be completed within the statutory maximum of sixty months. 11 U.S.C. § 1322(d). The Chapter 13 Trustee's report also showed that Gammarino had been paid $39,429.45 through the plan prior to dismissal. As a result, at the hearing, the Chapter 13 Trustee's representative orally withdrew her objection to Debtor's motion.

By the time of the hearing, testimony and proffered evidence showed that Debtor was current on his post-petition real property tax payments to the Hamilton County treasurer and to the first mortgage holder, Provident Bank. Neither objected to vacating the dismissal order. With the liens ahead of his second mortgage brought current, the bankruptcy court offered Gammarino, the sole remaining objector, the opportunity to explain how he would be prejudiced by vacating the dismissal order. Gammarino said that he wanted finality, and the ability to proceed with a foreclosure proceeding in state court on his second mortgage. He had not, however, commenced a foreclosure proceeding in the months between the dismissal and the time of the hearing.

The bankruptcy court considered the evidence and found that cause, including benefit to Debtor and his creditors, existed to reinstate the case. The court entered an order vacating the dismissal on January 13, 2003. The order states:

> For the reasons stated at the hearing, including the fact that the Chapter 13 Trustee withdrew her objection at the hearing and the fact that the Debtor made arrangements to bring his payments current with both the first mortgage holder, Provident Bank, and the Hamilton County Treasurer, we hereby find the Debtor's motion to be well-taken.

The bankruptcy court's order specifically states that the portion of Debtor's motion requesting that the court "reopen" the case is moot because the case was never closed. This appeal timely followed.

5

## IV.   DISCUSSION

The Panel will first address Gammarino's procedural argument.  Debtor's motion was titled "Motion to Reopen Case, Vacate Order of Dismissal and Resume Payment." Debtor's written motion cited only 11 U.S.C. § 350(b) and Local Bankruptcy Rule 5010 as authority for the relief he sought, although he orally cited both 11 U.S.C. § 105 and Fed. R. Civ. P. 60(b) at the hearing.  Both § 350(b) and Local Bankruptcy Rule 5010 address reopening of closed cases.  In bankruptcy, case closing is a concept distinct from case dismissal.  *Armel Laminates, Inc. v. The Lomas & Nettleton Co. (In re Income Property Builders, Inc.),* 699 F.2d 963, 965 (9th Cir. 1982).  Under § 350(a), the court shall close a case "[a]fter an estate is fully administered and the court has discharged the trustee." Section 350(b) in turn provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." But a case can only be reopened if it was first closed.  *Id.*[1]  The record shows that Debtor's case was dismissed, not closed, by the time Debtor filed his motion.  Therefore, Debtor's request to reopen the case was unnecessary and the bankruptcy court so noted by finding that much of the requested relief moot.

The record shows that the bankruptcy court did not "reopen" the case and did not rely on § 350(b).  Debtor's motion was also clearly styled as a motion to vacate the order of dismissal, in addition to seeking what was unnecessary relief in reopening a case that was not closed.  And the bankruptcy court's statements on the record demonstrate that it was deciding Debtor's motion insofar as it sought vacation of the dismissal order, not his moot request to reopen the case.  So while Gammarino is technically correct in his argument that § 350 does not provide authority for vacating the dismissal order, he completely misconstrues what the bankruptcy court actually decided and the basis upon

---

[1]"After an order of dismissal, the debtor's debts and property are subject to the general laws, unaffected by bankruptcy concepts." *In re Income Property Builders, Inc.,* 699 F.2d at 965.  The debtor is treated as if he had never been subject to bankruptcy.  "On the other hand, a bankruptcy is usually closed after the bankruptcy proceedings are completed.... A bankruptcy is reopened under 11 U.S.C. § 350(b), not to restore the prebankruptcy status, but to continue the bankruptcy proceedings." *Id.*

which it ultimately granted relief. The bankruptcy court simply did not base vacation of the dismissal order on § 350(b).

With Gammarino's procedural argument of no moment, the Panel will next address whether the bankruptcy court otherwise had authority to vacate the dismissal order and whether it abused its discretion in exercising that authority. Motions to vacate dismissal orders, or motions to reinstate cases as they are colloquially called, are frequent procedural requests under Chapter 13. As Debtor's counsel cited at the hearing, bankruptcy courts are authorized to set aside a final judgment or order, including case dismissal orders, under Fed. R. Bankr. P. 9024, which incorporates Fed. R. Civ. P. 60(b) into practice under the Bankruptcy Code. *In re King,* 214 B.R. 334, 336 (Bankr. W.D. Tenn. 1997); *In re Woodhaven, Ltd.*, 139 B.R. 745, 749 (Bankr. N.D. Ala. 1992). Rule 60(b) sets forth six reasons that justify granting relief from a final judgment or order:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). The bankruptcy court did not specify which clause of Rule 60(b) it was relying upon in vacating the dismissal order. Nor have other bankruptcy courts addressing situations involving vacation of Chapter 13 dismissal orders stated which clause of Rule 60(b) was applied, beyond noting generally that Bankruptcy Rule 9024 and Rule 60(b) authorize the relief requested. *See, e.g., Hill*, 305 B.R. at 108; *Diviney v. Nationsbank of Texas (In re Diviney)*, 211 B.R. 951, 962 (Bankr. N.D. Okla. 1997). In this case, clauses (2), (3), (4), and (5) of Rule 60(b) are clearly inapplicable. The Panel will therefore analyze whether either clause (1) or clause (6) of Rule 60(b) authorized the bankruptcy court to vacate its dismissal order.

The original dismissal order was entered by default. Although Chapter 13 cases are different in goal, interim events and duration than conventional lawsuits between plaintiffs and defendants, there is no reason that the standards applied more generally to vacating default entries in civil contexts do not apply with equal force in this bankruptcy case. Where Rule 60(b) is invoked to set aside a default judgment, a trial court is directed to consider three equitable factors derived from Fed. R. Civ. P. 55 jurisprudence as to "good cause" for setting aside default entries: (1) whether plaintiff will be prejudiced if the judgment is vacated; (2) whether the defendant had a meritorious defense; and (3) whether culpable conduct of the defendant led to the default. *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983). In addition to considering the equitable factors enumerated in *United Coin Meter*, the court must also find that one of the specific requirements of Rule 60(b) is met. *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 433 (6th Cir. 1996). The record shows that the bankruptcy court considered all of the *United Coin Meter* factors, even if not denominated as such.

The bankruptcy court specifically asked Gammarino what prejudice he would suffer if the dismissal order were vacated. The only detriment Gammarino identified was that he would be deprived of the finality he desired. Gammarino was tired of dealing with the Debtor and wanted to foreclose on the property–a common phenomenon in Chapter 13 cases, as the bankruptcy court aptly noted. Gammarino had, however, been paid $39,429.45 through the plan prior to dismissal, and would receive $2,500 a month again upon reinstatement. With the cure of the defaults in payments due to the creditors with property interests ahead of his second mortgage interest, and through ongoing plan performance thereafter, any arguable prejudice to Gammarino through reinstatement was resolved. That Gammarino was unhappy with the terms of the confirmed plan is not a proper basis for denial of the motion to vacate the dismissal. The bankruptcy court ultimately found by vacating the dismissal order that Gammarino asserted no cognizable prejudice resulting from the act of reinstatement itself, and the Panel agrees that it did not abuse its discretion in so finding.

In the context of Chapter 13 case dismissals, Debtor also presented at the hearing the equivalent of a meritorious defense, namely, that he had resolved the issues and

8

defaults that resulted in dismissal of his case in the first instance and would be able to perform the plan through to completion in the future. Most of the evidence at the hearing was devoted to and supports this point. Debtor had reached agreements with the first mortgage holder and the county property taxing authorities to bring his delinquent post-petition payments current. The Chapter 13 Trustee's formal objection to reinstatement of the case was withdrawn because Debtor made two substantial plan payments that would permit Debtor to complete the plan within the time required by § 1322(d). In this context, these circumstances are analogous to there being a meritorious defense in conventional civil lawsuits involving a plaintiff and a defendant.

Under the Sixth Circuit's jurisprudence on vacating default judgments under Rule 60(b), "[t]o be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard Claims Serv., Inc. v. Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986).[2] Debtor's illness and hospitalization appear as significant factors in the bankruptcy court's decision. Debtor's counsel proffered to the court evidence of Debtor's hospitalization due to heart problems in September 2002, which was the pivotal time frame for all of the issues related to his ongoing plan performance.[3] By the time of the hearing, Debtor's health had stabilized and he was then in a position to cure the plan defaults. The bankruptcy court believed that the plan defaults and resulting failure to contest dismissal resulted from health problems beyond Debtor's control and did not result from the culpable conduct of Debtor. Gammarino argued that the magnitude of Debtor's defaults showed an intent to thwart the judicial process and harass creditors. Rather than a basis for denying

---

[2]In *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992), the Sixth Circuit refined its *United Coin Meter* analysis in cases involving Rule 60(b)(1). As later explained by the court, *Waifersong* clarifies "that a party seeking to vacate a default judgment under Rule 60(b)(1) must demonstrate first and foremost that the default did not result from his culpable conduct." *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002). In the absence of such a demonstration, the court need not even analyze the other two *United Coin Meter* factors. *Id.*

[3]Debtor was present at the hearing and prepared to testify about his hospitalization and health problems. Gammarino did not contest these problems, relying instead on his asserted desire for finality and the magnitude of the default as determinative.

relief, however, the magnitude of the defaults and Debtor's significant and concerted effort to resolve them reinforces that the original default was not an abuse of the bankruptcy system. Debtor was not just harassing and delaying his creditors, and the bankruptcy court believed he sincerely intended and was likely to complete his confirmed plan. In a Chapter 13 case, significant health problems are simply not "culpable" conduct with which a debtor should be charged so as to deny reinstatement of a Chapter 13 case and plan through vacation of a dismissal order.

As the record supports the propriety of relief based preliminarily on the *United Coin Meter* equitable factors, the Panel will next address whether Debtor was entitled to relief under either clause (1) or clause (6) of Rule 60(b). Clause (1) and clause (6) of Rule 60(b) are mutually exclusive. *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 393, 113 S. Ct.. 1489, 1497 (1993). Specifically, clause (6) applies "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990); *Cincinnati Ins. Co.,* 151 F.3d at 578*; Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989); *see also Pierce v. United Mine Workers*, 770 F.2d 449, 451 (6th Cir. 1985), *cert. denied*, 474 U.S. 1104 (1986); *Ackermann v. United States*, 340 U.S. 193, 199, 71 S. Ct.. 209, 212 (1950). This point was reinforced by the Sixth Circuit in *McCurry v. Adventist Health System/SunBelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002), where it held that a trial court erred in considering and granting relief to plaintiffs under Rule 60(b)(6) before analyzing the propriety of relief under Rule 60(b)(1). The Panel will therefore first address whether Rule 60(b)(1) authorized the bankruptcy court to vacate the dismissal order.

The circumstances of this case do not fit within Rule 60(b)(1), which provides relief based on "mistake, inadvertence, surprise or excusable neglect." Nothing in this case raises any suggestion that Debtor's plan defaults and the resulting dismissal occurred due to mistake, inadvertence or surprise.

The focus is thus whether "excusable neglect" fairly describes what occurred in this case. Although the issue determined by the Supreme Court in *Pioneer* was grounds for permitting a late filed claim under Fed. R. Bankr P. 9006, it also extensively discussed

10

Rule 60(b)(1) and (6) and the concepts of "neglect" and "excusable neglect." Quoting Webster's Ninth New Collegiate Dictionary 791 (1983), the Supreme Court identified the ordinary meaning of "neglect" as "'to give little attention or respect" to a matter, or closer to the point for our purposes, "to leave undone or unattended to *esp[ecially] through carelessness*."' *Pioneer*, 507 U.S. at 388 (emphasis in original). And in comparing "neglect" under Fed. R. Bankr. P. 9006 with "neglect" under Rule 60(b)(1), the Supreme Court distinguished acts attributable to negligence from acts attributable to reasons beyond a litigant's control. *Id.* at 394-95. Citing *Klapprott v. United States*, 335 U.S. 601, 613-14, 69 S. Ct. 384, 389-90 (1949), the Supreme Court noted that under Rule 60(b)(1), the former is "neglect" and the latter is not. *Pioneer*, 507 U.S. at 394-95. Specifically, "Justice Frankfurter, although dissenting on other grounds, agreed that Klapprott's allegations of *inability* to comply with earlier deadlines took his case outside the scope of 'excusable neglect' 'because "neglect" in the context of its subject matter carries the idea of negligence and not merely of non- action.'" *Id.* at 394 (quoting *Klapprott*, 335 U.S. at 630) (emphasis in original). The instant record demonstrates not negligence, inattention or careless disregard of the circumstances, but rather, Debtor's inability to act. The bankruptcy court plainly did not believe that Debtor was indifferent or careless as to his failure to meet his plan obligations and to oppose dismissal. Rather, the bankruptcy court focused on Debtor's health issues as events beyond his control. According to the *Pioneer* analysis, the circumstances of this case did not amount to "neglect" under Rule 60(b)(1), whether excusable or otherwise. Accordingly, the Panel will analyze whether Rule 60(b)(6) authorized the bankruptcy court to vacate the dismissal order.

Rule 60(b)(6) authorizes vacation of a judgement or order if a court determines, in its sound discretion, that substantial justice would be served if relief were granted. *Cincinnati Ins. Co.*, 151 F.3d at 578. Although Rule 60(b)(6) does not particularize the factors that justify relief, the Supreme Court has noted that it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," *Klapprott,* 335 U.S. at 615, while also cautioning that it only be applied in "extraordinary circumstances," *Ackermann,* 340 U.S. at 199; *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64, 108 S. Ct. 2194, 2204-5 (1988).

11

Notably, Debtor is not contesting the original grounds for dismissal or that the bankruptcy court was wrong in dismissing the case. Rather, Debtor is asserting both that the circumstances that resulted in dismissal – his failure to make plan payments and to object to the motion to dismiss – were excusable and that those circumstances have since been resolved. *See Metmor Fin., Inc. v. Bailey (In re Bailey)*, 111 B.R. 151, 153 (W.D. Tenn. 1988) ("[W]hether cause existed for the initial order is a distinct issue from whether to vacate the order under Rule 60(b)(6)."). Debtor proved he was in a position to fund the remainder of the plan and had cured his post-petition payment defaults. As the bankruptcy court accurately assessed, "the question is really whether there are prospects here for the business to keep generating income and for debtor to pay creditors through this plan in a meaningful way. It looks to me like he's done–made great strides in the last few weeks to settle with the taxing authorities and with the major lender in this case, which is an accomplishment which is quite remarkable under the circumstances...And perhaps when those repayment numbers start to get to substantial amounts, Mr. Gammarino even may agree that this was probably the only way to get anything out of this situation considering the circumstances."

In the Chapter 13 bankruptcy context, substantial justice was served by reinstating Debtor's case, thus fostering the bankruptcy policies of promoting both reorganization and equality of distribution to creditors. Where, as here, the inability to act resulted from sickness and hospitalization beyond a party's control, and where substantial justice will in turn be served by vacating a dismissal order, other courts have found the type of extraordinary circumstances within the ambit of Rule 60(b)(6). *See Randall v. Merrill Lynch*, 820 F.2d 1317, 1321 (D.C. Cir. 1987) (comparing *Ackerman*n with *Klapprott*, court held that a combination of illness and financial hardship constituted extraordinary circumstances justifying Rule 60(b)(6) relief); *Beaman v. Levy (In re Levy)*, 75 B.R. 894 (Bankr. S. D. Ohio 1987). In this case, the bankruptcy court believed, and the Panel finds that a reasonable person could certainly agree, that substantial justice was served for both Debtor and his creditors in reinstating Debtor's Chapter 13 case and plan.

In deciding a motion for relief under Rule 60(b), a court is given much discretion. *Bank of Montreal v. Olafsson*, 648 F.2d 1078, 1079 (6th Cir. 1981), *cert. denied*,

454 U.S. 1084 (1981). The Panel declines to disturb the bankruptcy court's decision vacating its prior order of dismissal because it was authorized by Rule60(b)(6) to grant the relief requested and it did not abuse its discretion in exercising that authority to reinstate Debtor's case.

## V.    CONCLUSION

Bankruptcy Rule 9024 and Fed. R. Civ. P. 60(b)(6) authorized the bankruptcy court to grant Debtor's Motion to Reopen Case, Vacate Dismissal and Resume Payments. Based on Debtor's pre-dismissal health problems and the post-dismissal cure of plan defaults that occurred in this Chapter 13 bankruptcy case, the Panel is not left with a definite and firm conviction that the bankruptcy court abused its discretion in vacating the dismissal order and reinstating Debtor's Chapter 13 plan. For the reasons set forth in this opinion, the decision of the bankruptcy court is **AFFIRMED**.