Jeffery P. Hopkins, United States Bankruptcy Judge
Presently before the Court is the Debtor Lori Smallwood's (the "Debtor") Motion to Vacate Order of Dismissal ("Motion to Vacate") (Doc. 172) and FV-1, Inc.'s ("FV-1") corresponding Objection (Doc. 175). Initially, Trustee Margaret Burks (the "Trustee") also objected. (Doc. 173). However, during the hearing, the Trustee suggested that she would not oppose the Motion to Vacate. After the hearing, the Debtor submitted a Brief in Support of the Motion to Vacate (Doc. 197) and FV-1 submitted its Response (Doc. 198). Thus, the Debtor's Motion to Vacate is squarely before the Court to decide on the merits.
SUMMARY OF FACTS
The Mortgage and Note
On February 12, the Debtor and her former spouse, Kenneth Smallwood, became owners of real property located at 2122 North Gath Road, Sardinia, Ohio (the "Property"). See Adversary Case 13-ap-01001, Doc. 28, Exhibit A. On February 16, 2007, Kenneth Smallwood signed a promissory note payable to Fifth Third Mortgage Company ("Fifth Third") in the amount of $84,525.00 (the "Note"). See 13-ap-01001, Doc. 28, Exhibit A-1. The Debtor did not sign the Note. On February 16, 2007, the Debtor and Kenneth Smallwood executed a mortgage (the "Mortgage") for the Property.[1] See 13-ap-01001, Doc. 28, Exhibit A-4. The Mortgage was recorded on June 8, 2007, in the Highland County, Ohio Recorder's Office, Book 674, Page 932-936. See 13-ap-01001, Doc. 28.
On May 9, 2012, Kenneth Smallwood transferred his interest in the Property to the Debtor by quit-claim deed in accordance *181 with the terms of a divorce decree issued by the Highland County Court of Common Pleas, Domestic Relations Division. See 13-ap-01001, Doc. 28, Exhibit A-3. On June 18, 2012, Fifth Third filed a foreclosure action in the Highland County Common Pleas Court against the Debtor for defaulting on the Mortgage. See 13-ap-01001, Doc. 28. The Debtor subsequently filed for Chapter 13 relief.
Procedural History
The procedural history of this case is somewhat convoluted but important to understanding the Court's decision.
On August 8, 2012, when the Debtor filed her petition[2] seeking bankruptcy relief (Doc. 1), she included with it a Chapter 13 plan. (Doc. 7). Section 30 of the plan provided:
THE PURPORTED MORTGAGE ON THE [PROPERTY] IN FAVOR OF FIFTH THIRD BANK ("CREDITOR"), ITS PREDECESSORS, SUCCESSORS OR ASSIGNS,...SHALL BE AVOIDED AND PAID AS A GENERAL UNSECURED CLAIM UPON THE TIMELY FILING OF A PROOF OF CLAIM. THE PURPORTED MORTGAGE WAS DEFECTIVELY ACKNOWLEDGED AND NOT ENTITLED TO BE OF RECORD DUE TO ITS IMPROPER ACKNOWLEDGMENT AND THEREFORE SHALL BE AVOIDED PURSUANT TO IN RE NOLAN, 365 B.R. 804 (BANKR.S.D.OHIO 2007). DEBTOR'S COUNSEL OR THE CHAPTER 13 TRUSTEE WILL FILE AN ADVERSARY PROCEEDING TO AVOID THIS MORTGAGE.
(Doc. 7). On September 21, 2012, Fifth Third filed an Objection to Confirmation of Plan, asserting that its claim was fully secured by value in the Property. (Doc. 22). On October 5, 2012, Specialized Loan Servicing LLC, as agent for Fifth Third, filed a proof of claim. See Claim No. 7. Fifth Third's proof of claim shows a total debt amount of $85,733.68. (Claim No. 7, Doc. 7-1).
On December 5, 2012, Trustee Margaret Burks (the "Trustee") filed an Objection to Confirmation of Plan. (Doc. 33). The Trustee objected to the plan, in part, because she questioned the ability of the Debtor to avoid Fifth Third's Mortgage on the Property. (Doc. 33). On January 1, 2013, the Debtor filed adversary case 1:13-ap-01001, seeking to avoid the Mortgage through a declaratory judgment (the "Adversary Proceeding"). (13-ap-01001, Doc. 1). On January 7, 2013, the Debtor and Fifth Third entered an Agreed Order Conditionally Resolving Objection to Confirmation of Plan stating the Adversary Proceeding was the appropriate mechanism for determining the validity of Fifth Third's claim. (Doc. 43). As part of the Agreed Order, Fifth Third withdrew its Objection to Confirmation of Plan. The Trustee subsequently withdrew her Objection to Confirmation of Plan. (Doc. 41), and the plan was confirmed on January 8, 2013. (Doc. 44).
On October 5, 2015, the Court issued its opinion on the adversary complaint. (13-ap-01001, Doc. 36). In its ruling, the Court determined that Fifth Third held no lien against the Property. See 13-ap-01001, Docs. 36 and 37. The Adversary Proceeding was closed on October 27, 2015. For the next two years the Debtors' Chapter 13 plan proceeded with some of the normal disruptions experienced by debtors struggling *182 to make plan payments until she finally defaulted on her payments.[3]
The Present Motion and Proceedings
On May 18, 2017, the Debtor's Chapter 13 case was dismissed for failure to make plan payments (the "Dismissal") (Doc. 169). On May 23, 2017, the Debtor filed the Motion to Vacate Order of Dismissal presently before the Court (the "Motion"). (Doc. 172). Both the Trustee and Fifth Third objected to the Motion. See Docs. 173 and 175, respectively. On May 31, 2017, FV-1[4] filed a Supplemental Objection to the Motion. (Doc. 176).
On July 27, 2017, a hearing was held on the Motion.[5] Following the hearing, the Debtor submitted her Brief in Support of Motion to Vacate (Doc. 197), to which FV-1 submitted a Response. (Doc. 198). The Court must now decide whether to grant the Debtor's Motion to Vacate Order of Dismissal under the standards established by F. R. Civ. P. 60(b), made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9024.
Parties' Positions
I. Debtor's Argument
The Debtor's initial written Motion did not cite any legal authority. (Doc. 172). Rather, the Debtor asked the Court to vacate the Dismissal for non-payment because she "suffered a temporary increase in extraordinary living expenses due to funeral costs and expenses of her child's father." (Doc. 172). Subsequent to the evidentiary hearing held on July 27, 2017, the Debtor filed her Brief in Support of Motion to Vacate (the "Brief"). (Doc. 197). In the Brief the Debtor argues: (I) that FV-1 lacks standing to object to the Debtor's Motion; (ii) that the Motion should be granted under Rule 60(b)(1) ; and (iii) that if relief under Rule 60(b)(1) is unavailable, the Motion should be granted under Rule 60(b)(6) for reasons of equity.
II. FV-1's Argument
FV-1 has objected the Debtor's Motion to Vacate on several grounds. Specifically, FV-1 argues: (I) that the Debtor's Motion is improper because she did not appeal the dismissal; (ii) that it has standing to bring the Objection because it is a party with a pecuniary interest; and (iii) that the Debtor has provided insufficient evidence for this Court to provide relief under Rule 60(b). (See Motion to Vacate Hearing, July 27, 2017; Docs. 176 and 198). Subsequent to the Dismissal, FV-1 filed a foreclosure action in the Court of Common Pleas for Highland County, Ohio. See Doc. 198.
LAW
Timing of Motion to Vacate
The Supreme Court has determined that a motion for relief under Rule 60(b) cannot be granted if the movant did not first file an appeal and the time to appeal has expired. See Ackermann v. United States , 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). Importantly, this case does not state that an appeal must first be filed if the appeal period has not elapsed. Federal courts have consistently ruled that it is not necessary to appeal a decision before filing a Rule 60(b) motion if the *183 appeal period has not expired. As one appeals court observed:
At the time of filing the motion for relief, [the movant] could in the alternative have launched a direct appeal from the dismissal. 9 Wright & Miller, Federal Practice and Procedure: Civil § 2376 (1971). In doing what he did here, it would appear that he followed what we deem ordinarily to be the better practice of bringing to the attention of the trial court at some appropriate time before appeal the errors which it is claimed have been committed. The [trial court] already familiar with the case is thereby given an opportunity to correct any mistakes it might have made and the parties will avoid the expenses and delays involved in appeals.
Beshear v. Weinzapfel , 474 F.2d 127, 130 (7th Cir. 1973). As the Seventh Circuit noted in Beshear , it is actually better practice for counsel of the losing party to file a Rule 60(b) motion prior to an appeal if the appeal period has not elapsed to avoid the added expense and delay of an appeal. Id.
Federal Rule of Bankruptcy Procedure 8002 provides the time for filing notice of appeal. Rule 8002(a)(1) provides: "Except as provided in subdivisions (b) and (c), a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." Therefore, if the Debtor did not file the Motion within fourteen days of the dismissal, the Motion must be denied on procedural grounds because the appeal time will have already run.
In the case at bar, the Order of Dismissal was entered on May 18, 2017. The fourteen-day appeal period ran until 11:59 p.m. on June 1, 2017. The Debtor filed the Motion on May 23, 2017. As such, the Motion was clearly filed within the fourteen-day period. Thus, the Debtor's Motion to Vacate was timely under the rules.
Standing
Next, Debtor argues that FV-1 does not have standing to bring the Objection because it is not a creditor and it does not have a "pecuniary interest." FV-1, on the other hand, contends, that it does have a pecuniary interest because the decision on this Motion affects its financial interest. The Court need not decide the standing issue, however, because of its decision to grant relief from judgment in this case under Rule 60(b)(6). Therefore, for purposes of this Opinion, the Court will assume that FV-1 does have standing to prosecute the Objection to the Motion to Vacate.
Federal Rule Civil Procedure 60(b)
As discussed, bankruptcy courts are authorized to set aside case dismissal orders under Rule 60(b). In re Geberegeorgis , 310 B.R. 61, 66 (6th Cir. BAP 2004). "[A] party seeking relief from a judgment or an order under Rule 60(b) 'bears the burden of establishing that its prerequisites are satisfied.' " In re Gundrum , 509 B.R. 155, 159 (Bankr. S.D. Ohio 2014), citing In re Brown , 413 B.R. 700, 705 (6th Cir. BAP 2009). In addition, the movant must establish the basis for relief under Rule 60(b) by clear and convincing evidence. Info-Hold, Inc. v. Sound Merch., Inc. , 538 F.3d 448, 454 (6th Cir. 2008).
The Debtor argues that she is entitled to relief under Rule 60(b)(1) or (6). Rule 60(b), in relevant part, provides:
On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason that justifies relief.
These two subsections are mutually exclusive. See *184 In re Jarvis , 405 B.R. 611, 614 (Bankr. N.D. Ohio 2009). Consequently, the Court must separately analyze both.
I. The Debtor is not entitled to relief under Rule 60(b)(1).
Rule 60(b)(1) permits vacating dismissals due to "mistake, inadvertence, surprise, or excusable neglect." Relief under Rule 60(b)(1) is "intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." Cacevic v. City of Hazel Park , 226 F.3d 483, 490 (6th Cir. 2000) (citations omitted).
The Debtor contends that she made a "mistake" by trusting that her employer would follow the Court's payroll deduction order. The Court is not persuaded that this is the type of mistake that Rule 60(b)(1) was meant to address. The alleged mistake in these proceedings did not transpire from the actions of an attorney or trial judge. Nor is this the kind of excusable litigation mistake by a party which falls under the rubric of Rule 60(b)(1). The plain language of the Rule 60(b)(1) does not extend to the actions of individuals or entities who are not parties, in this case the Debtor's employer.
Accordingly, the Debtor is not entitled to relief under Rule 60(b)(1).
II. The Debtor is entitled to relief under Rule 60(b)(6).
The United States Bankruptcy Appellate Panel of the Sixth Circuit has held that: " Rule 60(b)(6) authorizes vacation of a judgment or order if a court determines, in its sound discretion, that substantial justice would be served if relief were granted." In re Geberegeorgis , 310 B.R. 61, 69 (6th BAP 2004), citing Cincinnati Ins. Co. , 151 F.3d 574, 578 (6th Cir. 1998). Relief under Rule 60(b)(6) is only warranted in "exceptional or extraordinary circumstances" that Rules 60(b)(1)-(5) do not address. Liljeberg v. Health Servs. Acquisition Corp. , 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) ; Olle v. Henry & Wright Corp. , 910 F.2d 357, 365 (6th Cir. 1990). The Sixth Circuit has defined "exceptional or extraordinary circumstances" to mean "unusual and extreme situations where principles of equity mandate relief coupled with a showing that absent relief, extreme and undue hardship will result." Valvoline Instant Oil Change Franchising, Inc. v. Autocare Associates, Inc. , No. 98-5041, 1999 WL 98590, at *3 (6th Cir. 1999) (citations omitted).
For the reasons that follow, the Court finds that both equity and the avoidance of extreme undue hardship warrant relief under Rule 60(b)(6). At the outset, the Court recognizes that many cases summarily reject the use of Rule 60(b)(6) as a mechanism for seeking relief from judgment by a party.[6] However, a number of cases also have relied on Rule 60(b)(6) in granting relief for reasons of equity.[7] In one such case, a bankruptcy court granted relief because of a subsequent decrease in the debtor's expenses and increase in earning potential.[8] See *185 In re Timmons , 479 B.R. 597 (Bankr. N.D. Ala. 2012). The Timmons court found that the debtor's change in circumstances warranted relief under Rule 60(b)(6), which "is reserved for instances of genuine injustice." Id. , at 609. In so holding, the court found, under the facts presented, that "[t]he debtor and his children should be given this extra chance and should be allowed to remain in their home, so long as they continue to make monthly mortgage payments." Id. The Timmons court also granted a temporary injunction to prevent a creditor from foreclosing on the debtor's residence. Id.
This Court agrees with the rationale expressed in Timmons. Undergirding our nation's bankruptcy laws is the notion that an "honest but unfortunate debtor" ought to be given an opportunity at a "fresh start." See Marrama v. Citizens Bank of Massachusetts , 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). The Court believes that the Debtor should receive a second chance at obtaining the fresh start which the bankruptcy laws have been promulgated to achieve. The Court also finds that the facts in this case presents one of those rare instances where relief under Rule 60(b)(6) is warranted in order to prevent a "genuine injustice" and an undue hardship.
Here, the Debtor lives in a house with her adult son who has special needs and. three minor children. As previously noted, the Debtor's house will surely be foreclosed upon if the protections of the bankruptcy court are removed, given the actions already taken by FV-1 in state court. The Debtor testified credibly that she spent $500 and lost roughly six hours of work for which she did not get paid searching for a guardianship for her special needs son. This added expense was partially responsible for the Debtor's missed plan payment.
More troubling to the Court is the fact that the Debtor, without the Court's permission, incurred $10,000[9] to cover the funeral expenses of her child's father. While the Debtor was not legally obligated to undertake those costs, it must be acknowledged that the death of her ex-spouse was beyond her control. Moreover, based on the Debtor's testimony, it appeared that she was sincere and felt morally obligated to assist with her child's father's funeral arrangements to ensure that he received a decent burial. The Court is hesitant to find culpability in the Debtor's decision under these circumstances, especially in light of other factors present which demonstrate the Debtor's sincerity in attempting to repay her creditors.
The Court notes that since the dismissal of her bankruptcy case, the Debtor has increased her income by taking on a second job. By taking the second job, the Debtor now can afford to make the payments in the proposed modified plan that her attorney recently filed on her behalf. (Doc. 186). According to the Trustee, if approved, the Debtor's plan as modified "could complete [ ] within five years of *186 confirmation and the Debtor has paid $3,230 since her case was dismissed."[10] Importantly, also, the Debtor's plan is 69% complete. In the interest of justice, the Debtor ought to have a chance to see her modified plan to completion.
Under the totality of the circumstances, the Court finds that this is one of those rare instances in which it should exercise its discretion for equitable reasons to allow the Debtor another opportunity. Absent the relief available under Rule 60(b)(6), the Debtor and her children will likely suffer an extreme and undue hardship precipitated by the foreclosure of their home. The Debtor has met her burden of demonstrating by clear and convincing evidence that exceptional and extraordinary circumstances exist. The Court believes that denying the Motion would work a substantial injustice and extraordinary hardship upon the Debtor. If the Debtor later defaults on the modified plan and the case is dismissed FV-1 will be no worse off and can return to state court to complete the foreclosure.
Accordingly, relief under Rule 60(b)(6) is appropriate.
Conclusion
Based on the foregoing, the Motion to Vacate (Doc. 172) is hereby GRANTED under Fed. R. Civ. P. 60(b)(6). The Order of Dismissal of Debt Adjustment Plan (Doc. 169) is hereby vacated pursuant to the terms of this order. A hearing on the Motion to Modify Plan (Doc. 186) filed by Debtor and the Objection (Doc. 190) filed by FV-1 is hereby reset for December 1, 2017 at 10:00 AM. All other terms and conditions expressed in this Court's Order to Set Hearing on Debtor's Motion to Modify Plan (Doc. 191), entered on July 20, 2017, shall apply at the rescheduled hearing. Counsel for the parties should govern themselves accordingly.
IT IS SO ORDERED.

The notary acknowledgment clause on page three of four of the Mortgage only includes the signature of Kenneth Smallwood. (Doc. 28). The Mortgage does not contain a certification of a notary public, or other appropriate state official, acknowledging the Debtor's act of signing the Mortgage, as required under Ohio Law at O.R.C. § 5301.01(A). (Doc. 28). It should also be noted that the Mortgage was recorded out of order; page four of four is actually the second page of the recorded Mortgage.

The case was originally assigned to Judge Perlman. However, on August 29, 2016, the case was reassigned to this Court. (Doc. 126).

The Trustee previously filed five motions to dismiss for the Debtor's failure to make plan payments. See Docs. 49, 65, 78, 107, and 154. However, the parties either entered agreed orders or the Trustee withdrew the motions on each occurrence. See Docs. 59, 69, 83, 121, and 160, respectively.

FV-1 became the holder of the Note through assignment.

Prior to the hearing, the Debtor submitted a Motion to Modify Plan to serve as evidence that the plan could complete within five years. (Doc. 186).

See In re Jarvis , 405 B.R. 611 (Bankr. N.D. Ohio 2009) ; In re Ausmus , 2016 WL 1268301 (W.D. Ky. 2016) ; In re Jawa , Bk. No. 13-25539, 2015 WL 8033762 (9th Cir. BAP 2015).

See In re Long , 22 B.R. 152 (Bankr. D. Me. 1982) ; In re Edwards , 236 B.R. 124 (Bankr. D. N.H. 1999) ; In re Kwiatkowski , 2005 WL 2860329 (Bankr. E.D. Pa. 2005).

The creditor was granted relief from the automatic stay because the debtor was not making mortgage payments. His case was eventually dismissed, in part, because he had filed two previous bankruptcies seeking protection on the same property. However, after the dismissal, the debtor's son moved out of his home to attend college, resulting in a decrease in living expenses. The debtor's business was also awarded a lucrative new contract, resulting in an increase in his revenue. This change allowed the debtor to make the necessary payments subsequent to his case's dismissal.

The Debtor testified that she and her son paid the funeral costs. It is unclear from the testimony or the Brief how much of the $10,000 she contributed.

Frank DiCesare spoke on behalf of the Trustee at the hearing.